UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | CRIMINAL No. 14-CR-183 (JDB) |
| : | |
| WILLIAM DOMENECH, : | **FILED UNDER SEAL** |
|    a.k.a "Poppy," : | |
|    a.k.a "Pappy," : | |
|    a.k.a "Godfather," : | |
| : | |
|    Defendant. : | |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through undersigned counsel, in accordance with 18 U.S.C. § 3553(a), files this Memorandum in Aid of Sentencing. The United States submits that a sentence of 70 months of confinement is sufficient but not greater than necessary to comply with the purposes of 18 U.S.C. § 3553(a).

### A. Factual Basis of Plea Relevant to Sentencing

1. Beginning in late 2009, the defendant worked in collaboration with other co-conspirators from Colombia, Venezuela, the Dominican Republic, the United States, Honduras, and elsewhere to transport a large quantity of cocaine on board a United States registered aircraft. In effecting this plan, the defendant traveled to several foreign countries and meet with numerous individuals to discuss the details and to provide money as an investment in the shipment of cocaine.

2. Specifically, in late 2009 or early 2010, the defendant was approached by his daughter, Regina Domenech, and her husband, Hurie Bodye, requesting for him to introduce

them to the defendant's drug trafficking contacts from his previous drug smuggling activities. During this time, Bodye, Regina Domenech, and the defendant met in Miami to discuss their desire to buy 50 - 100 kilograms of cocaine to be brought to The Bahamas. The defendant stated he knew a pilot, Miguel Rosa-Urena, from his previous drug smuggling activities who may be able to provide to them a source of cocaine. The defendant arranged a meeting between himself, Regina Domenech, and Rosa-Urena in Santo Domingo, Dominican Republic, to discuss where to obtain the cocaine and how to move the drugs to The Bahamas. Rosa-Urena suggested meeting two of his contacts in Venezuela and Colombia respectively in an effort to obtain the cocaine.

3. The defendant and Regina Domenech flew to Margarita, Venezuela, to meet with one of Rosa-Urena's contacts and then flew to Barranquilla, Colombia, to meet with Jose Polania-Vergara. After these unfruitful meetings, the defendant and Regina Domenech again met with Rosa-Urena in the Dominican Republic, where he introduced them to Jose Contreras, who the defendant knew from his previous drug smuggling activities. Together, these individuals reached an agreement to traffic cocaine. In carrying out the agreement, the defendant flew from The Bahamas to the Dominican Republic carrying approximately $250,000 provided by Bodye and other investors to be delivered to Contreras. Once in the Dominican Republic, the defendant and other co-conspirators went to a hotel where they met Jose Contreras and provided the money.

4. The defendant and Regina Domenech, along with Bodye, then set about to obtain a U.S. registered aircraft to transport the cocaine that had been financed. The aircraft with U.S. registration N308RH was obtained, and flown to The Bahamas for inspection. While the defendant remained in the Dominican Republic, Rosa-Urena and another pilot flew to Venezuela where the aircraft was modified to carry a large load of cocaine. The aircraft was loaded with

1,500 kilograms of cocaine and Rosa-Urena and the other pilot flew it to a clandestine landing strip in Honduras, where it was unloaded by armed men. As a result of the financial investment of money that the defendant delivered, Bodye received approximately 50 kilograms of cocaine in The Bahamas.

5. This drug trafficking event evolved because of the defendant's contacts in the drug trafficking business. Without the appropriate introduction he provided to Rosa-Urena and his existing relationship with Contreras, Regina Domenech and Hurie Bodye would not have been as easily able to make contact with individuals who were able to source and transport the cocaine. The defendant was trusted to introduce his daughter, the representative of Bodye, to these individuals, and to deliver the financial investment to Contreras to coordinate the flight.

B. **Post-arrest and Cooperation**

6. Agents from ICE and DEA interviewed the defendant about this investigation on July 11, 2011. The interview was not custodial and he was not advised of his rights. During the interview, the defendant discussed matters surrounding the May 2010 drug trafficking flight and identified Contreras and one of the pilots based on their pictures in the media. The defendant also discussed the involvement of other individuals in the conspiracy and drug trafficking event and ended the interview with agents saying he needed to talk to Regina Domenech because she was the one who needed to talk to the agents before the investigation proceeded.

7. On February 20, 2013, the defendant was charged in the Superseding Indictment with violations of 21 U.S.C. § 959(b) and 21 U.S.C. § 963. He was arrested on March 19, 2013, in Orlando, Florida. After his initial appearance in the Middle District of Florida, and upon the request of the defendant's counsel at the time, the defendant was ordered by the Honorable United States Magistrate Judge Thomas B. Smith to undergo a competency examination. During

the evaluation conducted by Jeffery A. Danziger, M.D., the defendant admitted to a history of drug abuse, stating that he has smoked cocaine and used LSD. Ultimately, Dr. Danziger found the defendant was most likely malingering and is not suffering from a genuine mental illness or defect. Accordingly, the United States District Court for the Middle District of Florida found the defendant to be competent to stand trial and he was transferred to the District of Columbia.

8. After his arrival in the District of Columbia, the defendant met with government agents on June 25, 2014, and admitted his role in the conspiracy and helped corroborate the statements of Regina Domenech, Karen Major, Rosa-Urena, and Contreras regarding the events leading up to the drug trafficking flight of N308RH. As this time, the information provided by the defendant, while corroborating other evidence in the case and therefore useful to the government, has not been used in support of charging other individuals, and the defendant has not been needed to testify in any other case. The government anticipates, however, that the defendant's cooperation will continue in the prosecution of other indicted co-conspirators in this case, and may include testifying at a future trial. Regardless of how the cases against other co-conspirators are resolved, however, the government will continue to evaluate the usefulness of the defendant's cooperation.

C. **Sentence Recommendation**

9. The defendant's base offense level without adjustments for Count One, to which he pleaded guilty, is level 38. The defendant's adjusted offense level is level 27 based on the recommended sentence adjustments of a three (3) level reduction for acceptance of responsibility pursuant to Section 3E1.1(a)-(b), a two (2) level reduction for Safety Valve consideration pursuant to Section 2D1.1(b)(16), and a six (6) level reduction for a minor role pursuant to Sections 3B1.2(b) and 2D1.1(a)(5). Accordingly, as the defendant has a criminal history

category of level I, his advisory guideline range is 70 to 87 months under the Sentencing Guidelines. Should the defendant be sentenced on October 29, 2015[1], he will have served 31 months and 10 days.[2]

10. The charge to which the defendant pleaded guilty to carries a statutory mandatory minimum term of imprisonment of ten (10) years and a maximum term of life imprisonment, a fine not to exceed $4,000,000 and a period of supervised release of at least five (5) years. The government has, however, agreed that the defendant is eligible for Safety Valve, which removes the mandatory minimum term of imprisonment of ten (10) years. The government has also allowed the defendant a minor role adjustment in this case as compared to his co-conspirators; many of them drug traffickers with extensive experience. This minor role adjustment provides the defendant with a six (6) level decrease under the Sentencing Guidelines. These are very significant reductions, which along with the three (3) level decrease for acceptance of responsibility, place the defendant at a level 27 for sentencing, with a sentence guideline of 70 - 87 months. Finally, and in addition to the other agreements, the government agreed to recommend a sentence at the lowest end of that guideline range, that is 70 months, provided the

---

[1] The United States has separately filed a Motion to Continue the defendant's sentencing, based on the ongoing cases in which the assistance of the defendant is anticipated to be helpful to the government.

[2] The United States agrees that the defendant should receive credit for the time he was undergoing psychiatric evaluation in FCU Butner from April 30, 2013, to February 18, 2014. Pursuant to 18 U.S.C. § 3585, "the Attorney General shall give any person convicted of an offense credit toward service of his sentence for any days spent in custody in connection with the offense or acts for which sentence was imposed." Courts have credited defendants for time spent in mental health institutions to determine mental competence, so long as the defendant is in custody and the incarceration is "in a jail type institution or facility." *See Sell v. United States,* 539 U.S. 166, 186 (2003) (holding that time spent confined in a medical center for mental incompetence ordinarily counts toward sentence for time served) and *Cephus v. United States,* 389 F.2d 317 (D.C. Cir 1967) (holding that defendant's commitment to Saint Elizabeth's hospital for mental examination should be treated for purposes of credit as confinement in the District of Columbia pending trial).

defendant complied with the terms of the plea agreement. The defendant has complied with those terms at this time.

11. While minor, the defendant's role in this successful conspiracy must still be addressed and appropriately punished. Without the defendant's connections putting Bodye and Regina in contact with drug traffickers such as Rosa-Urena and Contreras-Reyes, the conspiracy would not have come to fruition. And although the defendant did not receive any financial payment for his role in the conspiracy, his actions lead to 1,500 kilograms of cocaine being transported from Venezuela to Honduras, and 50 kilograms of cocaine being provided to Bodye in The Bahamas.

12. Furthermore, the government disagrees with the defendant's mental issues as being a basis for a downward departure or mitigating factor for which the Court should consider a sentence less than 70 months. After extensive evaluation, the defendant was found to likely be malingering in his claimed mental issues. This conclusion is supported by the competent actions taken by the defendant during the conduct of the conspiracy, when he was trusted to not only travel and conduct meetings with other conspirators, but to deliver a significant sum of money in cash internationally. This conclusion is also supported by the defendant's actions during the proffer with government agents, when he provided lucid, detailed descriptions of his and others activities in this conspiracy. The Court should only consider mental conditions to be relevant in determining whether a departure (in this case below 70 months) is warranted if such conditions, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines. U.S.S.G. § 5H1.3. While the defendant's proper mental functioning could be an issue of the defendant being under the proper medical care, it is clear that the defendant is capable of functioning in

society and his mental conditions are not present such as distinguish him. Accordingly, the defendant's mental issues do not merit a further sentence reduction either through mitigation or a departure from the guidelines.

### D. Conclusion

WHEREFORE, based on the aforementioned statements and facts presented to this court, the United States respectfully requests this honorable Court impose a sentence of 70 months.

Respectfully submitted,

ARTHUR WYATT, Chief
Narcotic and Dangerous Drug Section

_____
Charles Miracle
Trial Attorney, U.S. Department of Justice
Narcotic & Dangerous Drug Section
145 N Street, NE, 2E300
Washington, D.C. 20530
(202) 616-0712


### CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2015, a copy of the foregoing Government's Memorandum in Aid of Sentencing was served via e-mail upon Andrea Antonelli, Esq., counsel for the defendant.

_____
Charles Miracle